UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ESTATE OF VERNON BERGMAN, acting through personal representative, SANDRA K. BERGMAN; SANDRA K. BERGMAN, surviving child of Vernon Bergman, ANNE M. BERGMAN, surviving child of Vernon Bergman; and LESLIE J. BERGMAN, surviving child of Vernon Bergman,<br><br>                Plaintiff,<br>   v.<br><br>EASTERN IDAHO HEALTH SERVICES, INC., an Idaho corporation d/b/a EASTERN IDAHO REGIONAL MEDICAL CENTER, INTERMOUNTAIN EMERGENCY PHYSICIANS, PLLC, JOSEPH ANDERSON, and TYLER CHRISTENSEN,<br><br>                Defendants. | Case No. 4:13-cv-00202-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendants' Motion to Declare Idaho Law as Governing this Action and Motion to Compel Election (Dkt. 18). For the reasons explained below, the Court will deny the motion.

# BACKGROUND

Plaintiffs allege the following facts:

On April 30, 2011, Vernon Bergman and his daughter Sandra were driving through Idaho on the way to their residence in Montana. *See Compl.,* Dkt. 1, ¶ XI. A few miles north of Dubois, Idaho, Mr. Bergman "underwent an altered mental status while in the car . . . ." *Id*. He complained of weakness, numbness and difficulty standing. He was taken to Eastern Idaho Regional Medical Center in Idaho Falls, Idaho.

While at the hospital, Mr. Bergman was left unattended and unrestrained in his room. He fell and struck his head. A CT scan taken after the fall indicated he had "an extra-axial hemorrhage adjacent to the left parietal region, with a crescentic configuration, suggesting a hematoma." *Id.* ¶ XVII. After the fall, Mr. Bergman remained at Eastern Idaho Regional Medical Center for over six weeks, until June 17, 2011. After his discharge, Mr. Bergman resumed his journey to Montana, where he was placed in rehabilitative care. His condition continued to deteriorate until he passed away on March 28, 2012.

Plaintiffs allege that Mr. Bergman "suffered a severe and debilitating brain injury while a patient at EIRMC." *Id.* ¶ XXIII. They further allege that "[h]e never recovered from the effects of this injury which ultimately was a substantial factor in his death." *Id.*

In April 2013, plaintiffs filed this action, alleging that defendants negligently cared for Mr. Bergman. In this motion, defendants ask the Court to "declare that Idaho law governs this matter." *Motion,* Dkt. 18, at 1. They further request an order compelling "Plaintiffs to elect whether this lawsuit is prosecuted by the individual heirs

of Vernon Bergman or by the [estate's] personal representative." *Id.*

## ANALYSIS

**1.    Defendants' Motion to Declare Idaho as the Governing Law in this Action**

The Court will deny defendants' motion for a ruling that Idaho law governs this entire action, though it will do so without prejudice. There are two key problems with defendants' motion – one procedural and one substantive.

Procedurally, defendants do not identify the basis of their motion. They do not say whether they are moving for dismissal, summary judgment, partial summary judgment, or for some other form of relief. Plaintiffs justly complain that it is difficult to respond to such a motion. *Response*, Dkt. 20, at 2.

Ultimately, however, it is apparent that defendants seek a ruling that will defeat plaintiffs' demand for damages arising from Mr. Bergman's alleged pain and suffering. Plaintiffs acknowledge this point in their response, stating that "Defendants want Idaho law to apply because it would defeat the Estate of Vernon Bergman's claims for his own pain and suffering resulting from the tortious conduct of EIRMC and/or its agents." *Response,* Dkt. 20, at 8. Under these circumstances, the logical procedural choice is a motion for partial summary judgment. Rule 56 allows parties to move for summary judgment on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought.") (emphasis added). The Court therefore intends to treat defendants' motion as one for partial summary judgment. For

the reasons explained below, the Court will deny the motion without prejudice, which will allow both sides the opportunity to provide additional evidence and briefing.

A more substantive problem with defendants' motion is that it does not focus on a specific issue. Rather, defendants ask the Court to issue a blanket ruling that Idaho law governs this entire action. A choice-of-law analysis, however, is not only claim-specific, it is *issue*-specific. *See generally Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995) (choice-of-law analysis in tort action is meant to "to identify the state most significantly related *to a particular issue* and to apply its law *to resolve that issue*") (emphasis added); *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004) ("choice of law analysis is performed for each issue adjudicated, therefore a different law can apply to different issues"). The Court will therefore deny defendants' motion to the extent it seeks a ruling that Idaho law governs this *action*. The Court will instead limit its focus to the issue currently in dispute: Which state's law governs damages on plaintiffs' survival claim?

### A. The Conflict Between Idaho and Montana Law

In the briefing, the parties discuss two different types of claims: wrongful death claims and survival claims. The key distinction between these two claims is the type of damages available. Stated simply, "survival damages are personal to the decedent . . . while wrongful death damages are personal to those who survive her." *Hern v. Safeco Ins. Co.*, 125 P.3d 597, 605 (Mont. 2005); *see also Farm Bureau Mut. Ins. Co. v. Eisenman*, 286 P.3d 185, 189 (Idaho 2012). Thus, in a typical wrongful death claim, the surviving heirs seek damages for loss of comfort and society of the decedent. *See*

*generally Vulk v. Haley,* 736 P.2d 1309, 1312 (Idaho 1987) (wrongful death statutes "are compensatory and enacted for the benefit of the named survivors"). The damages sought in survival claims, by contrast, will be those damages that came into existence while the decedent was still alive, which would theoretically include damages arising from the decedent's post-injury, pre-death pain and suffering. *See id.* at 1313 (damages for "pain and suffering are personal to the deceased").

Plaintiffs allege both types of damages. Mr. Bergman's daughters seek damages arising from the alleged wrongful death of their father, including "the loss of the care comfort society companionship and wrongful death of their father." [sic] *Compl.* ¶ XXIX. The estate seeks damages personal to Mr. Bergman, including damages for the "pain and suffering . . . subsequent to his fall and prior to his death." *Id.* ¶ XXX.

If Idaho law governs the survival claim, the estate will not be able to recover damages arising from Mr. Bergman's pain and suffering. Idaho statutory law expressly limits survival damages on these claims to those for: "(i) medical expenses actually incurred, (ii) other out-of-pocket expenses actually incurred, and (iii) loss of earnings actually suffered, prior to the death of such injured person and as a result of the wrongful act or negligence." Idaho Code § 5-327(2).

Montana law, by contrast, would allow recovery for Mr. Bergman's pain and suffering. As explained in *Hern v. Safeco Insurance Co.*, 125 P.3d 597, 604 (Mont. 2005), "[t]he damages that may be recovered in a survival action include lost earnings from the time of injury to death, the present value of reasonable earnings during the decedent's remaining life expectancy, medical and funeral expenses, reasonable

compensation for pain and suffering, and other special damages." *See also* Mont. Code Ann. § 27-1-501.

### B. Choice-of-Law Analysis

To determine which state's law controls this damages issue, the Court applies Idaho's choice-of-law rules. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) ("A federal district court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.").

In tort actions, Idaho applies the "most significant relationship" test to determine governing law. *See Seubert Excavators, Inc. v. Anderson Logging Co.,* 889 P.2d 82 (Idaho 1995); *see also* Restatement (Second) Conflicts of Law § 145. As its name suggests, the goal of this test is "to identify the state most significantly related to a particular issue . . . ." *Seubert,* 889 P.2d at 85. To identify this state, the Court engages in a two-step process. *Id.* First, it identifies the factual contacts between the parties and the competing states. Second, it evaluates those contacts in light of broad policy concerns outlined in Section 6 of the Restatement (Second) of Conflict of Laws.[1] *Id.*

In completing the first step, the Court examines the following:

(a)   the place where the injury occurred,

(b)   the place where the conduct causing injury occurred,

---

[1] These policy concerns are as follows: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations,(e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Seubert,* 889 P.2d at 85 n.1 (quoting Restatement (Second) of Conflict of Laws § 6).

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.*; Restatement (Second) of Conflict of Laws § 145. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) Conflict of Laws § 145(2).

On the current record, the Court cannot complete this analysis because the parties dispute key facts surrounding the third factor – "the domicile, residence, nationality, place of incorporation and place of business of the parties." More specifically, the parties dispute Mr. Bergman's domicile and residence.

Preliminarily, the Court must determine Mr. Bergman's domicile and residence at the time of the injury – not at the time of his death. As Justice Traynor long ago observed, "if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged." *Reich v. Purcell*, 432 P.2d 727, 730 (1967) (quoted approvingly in *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 48 n.3 (9th Cir. 1972)). Thus, the fact that Mr. Bergman eventually suffered the effects of defendants' alleged negligence in the State of Montana is not relevant.

Relatedly, the Court is not persuaded by plaintiffs' argument that Mr. Bergman's death is the "injury" in this case. Based on the allegations in the complaint, the injury, and the conduct allegedly causing the injury, occurred in Idaho, at the hospital. Plaintiffs alleged that Mr. Bergman "suffered a severe and debilitating injury *while a patient at*

*EIRMC.*" *Compl.* ¶ XXIII.  Thus, as far as domicile and residence is concerned, the date of the injury – which appears to be April 30, 2011 – is what matters.

The current record does not allow the Court to draw any conclusions as to whether Mr. Berman was a resident or domiciliary of Montana on that date.  Plaintiffs generally allege that "at all times herein pertinent," Mr. Bergman was a Montana resident.  *See Compl.* ¶¶ I, II.  The complaint is also careful to allege that "[o]n or about April 30, 2011, Mr. Bergman was traveling with his daughter, Sandra, *to their residence in Montana.*" *Id.* ¶ XI (emphasis added).

Defendants, on the other hand, say "[i]t is clear that at the time of the alleged negligence Mr. Bergman was neither domiciled in Montana nor was a resident of the State of Montana." *Mot. Mem.*, Dkt. 18-1, at 4.  Defendants did not submit any evidence on this point, however; they relied solely on the allegations in the complaint.

Plaintiffs submitted documents indicating that on or about April 20, 2011, Mr. Bergman signed a lease for a residence in Whitefish, Montana.  *See Montana Residential Lease Agmt., Ex. A Rissman Aff.,* Dkt. 20-2, at 3-8.  The lease indicates that the term would begin on May 1, 2011, though a note after the signature block states that a "more flexible move-in date" would be acceptable.  *See id.* at 8.

Ultimately, however, it is not clear whether Mr. Bergman had been to Montana at any previous point.  This fact is critical, because Mr. Bergman must show that he was physically present in Montana in order to establish either domicile or residence there.  As explained in *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986), "[a] change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention

to remain there indefinitely." *See also* Black's Law Dictionary (9th ed. 2009) ("Residence, on the other hand typically "just means *bodily presence* as an inhabitant in a given place") (emphasis added).

If, on April 30, 2011, Mr. Bergman was simply traveling to Montana, but had not yet arrived in that state, then it would appear he was still a resident and domiciliary of California.[2] After all, a person can only have one domicile at a time, and cannot acquire a new domicile until the old one is lost. *See Lew*, 797 F.2d at 750 (citing *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952) *and* Restatement (Second) of Conflicts §§ 18–20 (1971) (and examples provided)). Ultimately, this means that if a person is en route to an intended new domicile, then that person will not lose the old domicile, or acquire the new one, until arrival. *Cf. Alvord & Alvord v. Patenotre,* 92 N.Y.S.2d 514, 516-17 (N.Y. Sup. Ct. 1949) (defendant remained a resident of New York while en route to Switzerland with the intention of establishing residence in Switzerland).

Ultimately, however, based on the current record, the Court cannot decide where Mr. Bergman resided or was domiciled at the time of the injury. Further, the parties have not provided any meaningful briefing on this issue.

The Court will resist the temptation to simply assume that Mr. Bergman was a Montana resident on the date of the injury and proceed with the four-factor analysis. Among other things, it seems likely that there may not be a conflict of laws at all. If the

---

[2] The Court assumes that Mr. Bergman was a resident and domiciliary of California before he moved to Montana, based on the documents plaintiffs submitted. For example, the lease agreement for the Montana residence shows a California address for Mr. Bergman. *See Lease Agmt.*, Dkt. 20-2, at 8. Additionally, the medical records state that Mr. Bergman "and his family were in transit moving from California to Whitefish, Montana." *Ex. A to Barton Aff., Case Management Report*, Dkt. 20-3, at 6.

undisputed facts show that Mr. Bergman was a California resident and domiciliary at the time of the injury, it would appear that Montana law would drop out of the picture altogether. And California and Idaho law do not conflict regarding plaintiffs' ability (or inability) to recover for Mr. Bergman's pain and suffering. Neither Idaho nor California allows recovery of such damages in a survival action. *See* Idaho Code § 5-327(2) (limiting damages to medical expenses, out-of-pocket expenses, and loss of earnings); Cal. Civ. Code § 377.34 (excluding "damages for pain, suffering, or disfigurement" from damages recoverable in a survival action).

For all these reasons, the Court has determined that the best course at this stage is to deny the motion without prejudice.

**2.    The Motion to Compel An Election**

The Court will also deny defendants' motion to compel an election, which is based on Idaho statutory law.[3] Defendants insist that under Idaho Code § 5-311(1), one type of plaintiff must be dismissed from this lawsuit – either the personal representative or the three children.

The problem with this argument is that it ignores the fact the plaintiffs are bringing two actions based on defendants' alleged negligence: (1) a survival action, which is being pursued by the estate, through the personal representative; and (2) a wrongful death action, which is being pursued by the three children. Such an approach is consistent with Idaho statutory law.

---

[3] For purposes of ruling on this motion, the Court will assume, without deciding, that these Idaho statutes govern.

Idaho's wrongful-death statute says that either the personal representative or the heirs may pursue such an action. *See* Idaho Code § 5-311(1).[4] The statute providing for survival actions says that the personal representative shall pursue that action unless none has been appointed, in which case the heirs may pursue the action. Idaho Code § 5-327(1).[5] Reading these statutes together, the personal representative may pursue the survival action and the heirs may pursue the wrongful-death action. As a result, the Court does not need to dismiss any plaintiff at this point.

## ORDER

**IT IS ORDERED that:**

(1) Defendants' Motion to Declare Idaho Law as Governing this Action and Motion to Compel Election (Dkt. 18) is **DENIED** as follows:

(2) Defendant's motion to compel an election is **DENIED.**

---

[4] This section provides, in relevant part, as follows:

> When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case as may be just.

[5] This section provides, in relevant part, as follows:

> Such action shall be commenced or, if already commenced at the time of the death of the injured person, shall be thereafter prosecuted by the personal representative of the estate of the deceased person or, if there be no personal representative appointed, then by those persons who would be entitled to succeed to the property of the deceased person according to the provisions of section 5-311(2)(a), Idaho Code.

(3) Defendants' motion for an order declaring Idaho law as the governing law in this action is **DENIED WITHOUT PREJUDICE.**

(4) Within 21 days of this Order, defendants may renew their motion for partial summary judgment on the issue of damages. Any such motion shall address Mr. Bergman's residence and domicile, as explained above, and shall further comply with this District's Local Rules applicable to motions for summary judgment. *See* D. Idaho Local R. 7.1.

(5) If defendants decide to renew their motion for partial summary judgment, the parties shall meet and confer to determine whether an expedited briefing schedule is appropriate for such a motion, given the narrowness of the issues presented. If the parties reach an agreement regarding the briefing schedule, they shall submit an appropriate stipulation for the Court's consideration.

DATED: February 6, 2015

B. Lynn Winmill
Chief Judge
United States District Court